**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC LIVELY,

        Petitioner,

                                        CASE NO. 2:10-CV-12110
v.                                  HONORABLE LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

TOM BIRKETT,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Eric Lively, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for possession with intent to deliver methylenedioxymethamphetamine (commonly known as "Ecstasy"), M.C.L.A. 333.7401(2)(b)(i), and possession of marijuana, M.C.L.A. 333.7403(2)(d).  For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I.  Background**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with his wife and co-defendant Sheila Marie Lively. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

This case arises out of the execution of a search warrant at defendants' home at 608

1

Poplar Street in Wyandotte on August 17, 2004.  Sheila's son, Harold Hammond, was home at the time of the search, but defendants were not.  As this Court previously noted in *People v. Lively*, unpublished opinion per curiam of the Court of Appeals, issued November 21, 2006 (Docket Nos. 264222 and 264223), slip op, pp 2-3:

> A magistrate issued a warrant permitting a search of 608 Poplar Street in Wyandotte.  In the affidavit in support of the warrant, Wyandotte Police Detective Scott Galeski stated that police had responded to an unnamed "victim" who was running and yelling through the city streets, complaining that people with guns were following him and that he had been sexually assaulted.  After the victim was hospitalized, he was again interviewed and, at that time, he told Galeski that none of those events had taken place; that he had been using alcohol, marijuana, and ecstasy at the time; that he had purchased the illegal narcotics from a Roosevelt High School student by the name of Harold Hammond, whose nickname was "Tuffy"; and that the transactions had taken place out of Hammond's residence at 608 Poplar Street.  The affidavit further stated that Galeski had verified Hammond's identity and address through an in-house computer check and through Roosevelt High School officials.  Furthermore, the affidavit alleged that trash bags removed from the curb outside the Poplar Street address contained marijuana stems, seeds, and packaging, as well as evidence of residency.
>
> A search of the Poplar Street residence resulted in the seizure of 127 ecstasy tablets and nine individually-wrapped baggies of marijuana, an unloaded semiautomatic pistol and ammunition, currency, and rave equipment from defendants' upstairs bedroom. [1]  In a basement room belonging to Hammond (defendant Sheila Lively's son), marijuana and a price sheet for drug sales were found.  Officers also found a bag containing marijuana residue, a gas mask, rave equipment, narcotics packaging that matched the packaging located in the upstairs bedroom, a black light, and a "bong" in [a Chrysler Sebring registered to Sheila Lively].

Defendants moved to suppress evidence obtained from the search.  The trial court found the informant unreliable, noting "he retracted everything that he had given to the police, saying that it was not true and that ... he was under the influence of drugs

---

[1]  At trial, Eric testified that the tablets and baggies of marijuana were in his dresser, whereas the gun registered to Sheila and her gun permit were in her dresser.  Eric claimed that he did not know that Sheila had a gun or stored it in her dresser. (Footnote original).

or something at the time that he gave it."  The trial court also found that the affidavit lacked specificity with respect to the garbage bags removed from the curb outside defendants' home.  Consequently, the trial court granted defendants' motions and dismissed the charges against them.

The prosecutor appealed the trial court's dismissal of the charges, and this Court found no reasonable basis for concluding that, even though the informant retracted his first statement about being followed and sexually assaulted, his second statement, which was verified for accuracy, was unreliable. *Lively I, supra* at 6.  This Court also found that the police search of the garbage bags corroborated the informant's second statement and further supported probable cause. *Id*. at 7, 728 N.W.2d 426.  It noted that no independent corroboration of the marijuana found in the garbage bags was required. *Id*. at 7-8, 728 N.W.2d 426.  Because the totality of the affirmative allegations set forth in the affidavit supported the issuance of the search warrant, this Court reversed and remanded for reinstatement of the charges against defendants. *Id*. at 8-9, 728 N.W.2d 426.  The Supreme Court subsequently denied defendant's application for leave to appeal this Court's decision. *People v. Lively*, 477 Mich. 1059, 728 N.W.2d 426 (2007)(" *Lively II* ").

At trial, Detective Galeski testified that he interviewed Eric after the search.  During the interview, Eric admitted that: 1) he stored Ecstasy and marijuana for personal use by defendants, 2) he also stored Ecstasy for a friend and was trying to give it back to the friend at the time of the search, 3) defendants had used Ecstasy with friends, who reimbursed Eric for the cost of the drugs, 4) defendants occasionally gave a "couple" Ecstasy pills to Hammond and Eric was unsure whether Hammond used or sold them, and 5) the money the police recovered during the search was earned by defendant's (sic) in their jobs, as well as through the sale of drugs.

Eric subsequently testified that he lied to Detective Galeski during the interview to protect Sheila and Hammond.  He further claimed that Detective Galeski promised not to charge his family.  Contrary to his statements during the interview, Eric denied providing Hammond with Ecstasy or selling drugs.  However, he admitted that defendants had used Ecstasy several times.  He explained that, in February 2004, armed robbers broke into his home and demanded "stuff" from him and Hammond.  When Sheila arrived home during the robbery, the robbers sexually assaulted her.  Eric testified that the robbery and sexual assault upset defendants and they followed Hammond's recommendation to use Ecstasy to express their feelings about the incident.  By April or May 2004, however, Eric testified that Sheila had stopped using Ecstasy because they were planning to have a child.

At trial, Eric also offered a new explanation for the presence of the Ecstasy tablets and marijuana in his dresser.  He claimed that Sheila went to West Michigan to visit a friend on August 13, 2004.  On August 16, 2004, Eric realized he had not seen Hammond recently.  When he searched Hammond's basement room, he recovered

3

Ecstasy tablets and baggies of marijuana.  Rather than dispose of the drugs or call the police, Eric testified that he hid the drugs in his dresser and planned to discuss the problem with Sheila when she returned from West Michigan.  However, according to Eric, the police searched the home before Sheila returned.

*People v. Lively,* No. 284525, * 2-3 (Mich.Ct.App. January 7, 2010).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 486 Mich. 904 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court's failure to conduct an evidentiary hearing pursuant to *Franks v. Delaware* in connection with the defendant's pre-trial motion to suppress evidence was error entitling petitioner to an evidentiary hearing in federal court and habeas corpus relief where defense had adequately articulated the claim that the statements in regard for the truth and that in the absence of the statements there was no basis for probable cause to issue the warrant.

II. Defendant/appellant did not receive the effective assistance of counsel at trial due to counsel's failure to fully litigate the motion to suppress on the alternate theory that (a) *Franks* hearing was warranted prior to trial.  The State courts refused to grant evidentiary hearing.  Thus, petitioner is entitled to federal evidentiary hearing and habeas corpus relief.

III.  The prosecutor committed misconduct and denied defendant due process and a fair trial by improperly questioning the defendant in a manner that was unprofessional, improper, and highly prejudicial.

IV.  The trial court's decision granting the defendant's motion to suppress the evidence seized should be affirmed as being consistent with controlling U.S. Supreme Court precedent where the affidavit in the search warrant lacked probable cause because it was based on an unreliable source who had previously provided false information and that further no independent investigation by the officer supported the bold assertion that the defendants were involved in trafficking of ecstasy or possessed firearms.

V.  The good-faith exception to the exclusionary rule does not apply in the case at bar where the basis for excluding the evidence is not a defect in the warrant or a clerical error, but the Court's finding that there was a lack of probable cause to issue the warrant.

VI.  Defendant's supplemental argument: Defendant was constitutionally entitled to the effective assistance of counsel. U.S. Const. Amend. VI.  However, trial counsel was ineffective in failing to conduct basic pre-trial investigation into eyewitnesses

accounts that would not only directly contradict police Officer's statement of a trash pull, but also prove the officer committed flagrant perjury. Thus, trial counsel was ineffective.

VII. Defendant's supplemental argument: The trial court's decision granting the defendant's motion to suppress the evidence seized should be affirmed as being consistent with controlling U.S. Supreme Court precedent where the affidavit in search of the warrant lacked probable cause because it was based on an unreliable source who had previously provided false information and that further no independent investigation by the police officer supported the bold assertion that the defendants were involved in trafficking of ecstasy or possessed firearms.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(internal quotations omitted). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

## III.  Discussion

### A.  Claims # 1, # 4, # 5, and # 7.  The Fourth Amendment claims.

The Court will consolidate petitioner's Fourth Amendment claims for judicial clarity. In his first claim, petitioner alleges that the state trial court erred in failing to conduct an evidentiary hearing regarding petitioner's allegation that Detective Galeski had falsely stated in the affidavit in support of the search warrant that he had engaged in a trash pull at petitioner's house at 4:00 p.m. on August 16, 2004. In his fourth claim, petitioner contends that the search warrant was invalid because the information to support the issuance of the warrant came from an unreliable informant. In his fifth claim, petitioner contends that the Michigan Court of Appeals erred in concluding that a good-faith exception to the exclusionary rule applied in this case. In his seventh claim, petitioner again claims that the search warrant was invalid because it was based on an unreliable informant and that the police failed to independently investigate whether petitioner and his wife were trafficking in illegal drugs or in possession of firearms.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).

In the present case, petitioner was able to litigate his Fourth Amendment claims in the trial court and twice in the Michigan appellate courts, first, when the prosecution appealed the trial court's decision to suppress the evidence, and secondly, on petitioner's appeal of right following his conviction.  Petitioner is thus unable to raise a Fourth Amendment claim that the evidence in this case was the product of an illegal search when he raised the factual basis for his claims in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claims. *Machacek*, 213 F. 3d at 952.  Because the petitioner was afforded opportunities to present his case regarding the validity of the search, *Stone* bars his Fourth Amendment claims. *Brown,* 638 F. Supp. 2d at 813.

Petitioner, however, argues that he did not have a full and fair opportunity to litigate his

Fourth Amendment claim because the state trial judge never conducted an evidentiary hearing pursuant to *Franks v. Delaware* concerning petitioner's allegations that Detective Galeski had knowingly and intentionally provided false information in the search warrant affidavit concerning the time that he engaged in the trash pull at petitioner's house. In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court held that an affidavit of probable cause in support of a request for a search warrant that is valid on its face may be challenged by a defendant if it can be shown that 1) the affidavit contains intentionally or recklessly false statements, and 2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Id.* at 171-72.

The trial judge's failure to conduct an evidentiary hearing does not mean that the petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claim. The Sixth Circuit has ruled that a habeas petitioner's Fourth Amendment claim was barred by the *Stone v Powell* doctrine in a case where the state court had denied the petitioner's motion to suppress evidence without hearing live testimony, implicitly finding that the petitioner had been provided a full and fair opportunity to litigate his Fourth Amendment claim in the state courts even though no live testimony was taken. *See Jennings v. Rees,* 800 F. 2d 72, 74, 76-77 (6th Cir. 1986).

Moreover, petitioner presented his *Franks* claim to the Michigan Court of Appeals on his appeal of right following his conviction. The Michigan Court of Appeals addressed petitioner's claim and determined that no *Franks* hearing was necessary, because even absent the evidence that was obtained from the trash pull, there was sufficient information to support the issuance of a search warrant in this case, namely, the informant's statement that he had purchased narcotics from petitioner's stepson. *Lively,* Slip. Op. at 5. The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court, and can also include the

8

presentation of a Fourth Amendment claim to the state appellate courts as part of direct review of

the petitioner's conviction. *See Rashad v. Lafler,* 675 F. 3d 564, 570 (6th Cir. 2012)(petitioner had

ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal

habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected

defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up

at a hearing designed to consider them, and a state appellate court rejected his claims on the merits).

Because all of the material facts were before the state appellate courts on direct review and the

appellate process was not otherwise deficient, the petitioner had a full and fair opportunity to

litigate his Fourth Amendment claims.  Petitioner is not entitled to relief on these claims.

### B.  Claims # 2 and # 6.  The ineffective assistance of counsel claims.

In his second and sixth claims, petitioner contends that his trial counsel was ineffective for

failing to move for a *Franks* hearing in the state trial court or for failing to investigate witnesses

that would establish that the detective's statements regarding the trash pull were false.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the

principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim

is meritorious and that there is a reasonable probability that the verdict would have been different

absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*,

477 U.S. 365, 375 (1986); *See also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claims

on his appeal of right following his conviction, on the ground that a *Franks* hearing was

unnecessary because there was sufficient content remaining in the search warrant affidavit even

absent the trash pull allegations to support the issuance of a search warrant. *Lively,* Slip. Op. at 5.

Because there was sufficient information to support the issuance of a search warrant absent the evidence from the trash pull, counsel was not ineffective in failing to conduct a *Franks* hearing or to otherwise investigate for such a hearing. *See Fudge v. U.S.,* 673 F. Supp. 2d 568, 576-77 (W.D. Mich. 2009). Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### C. Claim # 3. The prosecutorial misconduct claims.

Petitioner finally contends that he was deprived of a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

Petitioner first contends that the prosecutor committed misconduct several times during her cross-examination of him.

On cross-examination, petitioner admitted that he committed a breaking and entering in the past, but denied breaking into two people's homes. Petitioner claims that the prosecutor improperly responded, "quit trying to minimize your liability. You broke into two people's houses, didn't you?" Petitioner subsequently admitted to being involved in two previous break-ins. Later, on cross-examination, when petitioner was attempting to explain why he had been untruthful in his statement to Detective Galeski, the prosecutor stated, "Do you think if you keep repeating the same lie it becomes the truth?" Petitioner claims that the use of the word "lie" was prejudicial. Finally, on direct examination, petitioner had testified about the robbery and sexual assault that motivated defendants' use of Ecstasy. On cross-examination, the prosecutor asked petitioner whether the robbers broke in to steal his drugs and whether he consequently shared some responsibility for the robbery and sexual assault.

Even if the prosecutor's questions during the cross-examination of petitioner were somehow improper, they were not so flagrant as to amount to prosecutorial misconduct, in light of the fact that the comments were isolated and the evidence against petitioner, including his statement made to police after arrest, was very strong. *See Smith v. Mitchell,* 567 F. 3d 246, 256 (6th Cir. 2009).

Petitioner next contends that the prosecutor committed misconduct when she stated in her closing argument that the defendants' practice of giving Ecstasy to Hammond as "warped" and suggested that petitioner and his wife condoned illegal drug use in their home.

The prosecutor's brief comments that petitioner was "warped" and condoned illegal drug usage did not rise to the level of a constitutional violation. See *e.g. Hutchison v. Bell*, 303 F.3d 720, 750–51 (6th Cir. 2002)(denying habeas claim of prosecutorial misconduct based on references to defendant as having "evil ways" and being "an evil force"). This would be particularly so in light

11

of the fact that the jurors were instructed that the lawyers' arguments were not evidence. Moreover, in light of the strong evidence against petitioner, the prosecutor's comments were harmless error at worst. Petitioner is not entitled to habeas relief on his third claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.**

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma*

*pauperis*.

S/Lawrence P. Zatkoff<br>
**HON. LAWRENCE P. ZATKOFF**

**Dated: June 25, 2013**                              **UNITED STATES DISTRICT JUDGE**